IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEBSTER BANK, N.A.<br>143 Bank Street<br>Waterbury, CT 06720<br><br>      Plaintiff,<br><br><br><br><br><br>      v.<br><br>JON SIPES<br>915 Potomac Avenue, S.E.<br>Washington, D.C. 20003<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>  Case 1.08-cv-00815<br>  Assigned To: Robertson, James<br>  Assign Date : 5/12/2008<br>  Description: Contract; Counter Claims:<br>  Breach of Contract; Deceptive Trade Practice;<br>  Equal Credit Opportunity Act; Real Estate<br>  Settlement Procedures<br>)<br>)  **JURY REQUEST**<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S ANSWER AND   COUNTERCLAIMS

Defendant JON SIPES, appearing pro se, submits his answer, affirmative defenses to the claims of plaintiff and seeks damages through his counter claims of breach of contract and violations of and the Uniform Deceptive Trade Practices Act.

1. Defendant admits the allegations contained in paragraphs 1, 2, 3, and 4 of the complaint.

2. Defendant admits the provisions of paragraph 5 alleging that "On or about December 9, 2005, Mr. Sipes received a mortgage loan from Webster Bank in the amount of Three Hundred Fifty-Four Eight Hundred and Sixty-One Dollars and No

RECEIVED
JUN 2 3 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Cents". Defendant admits that he received approval of an interim construction loan funded at specific stages of construction completion in this amount.

    3. Defendant admits the allegations in paragraphs 6 and 7.

    4. Defendant admits the allegations contained in paragraph 9.

    5. Defendant denies the allegation of paragraph 10 "that interest on the loan amount will accrue from December 9, 2005, until paid, at the prime rate plus 1.5 percent".   Defendant denies that he was to pay interest on the loan amount. Defendant was to pay interest only upon any sums drawn against the approved amount of the loan.

    6. Defendant admits the allegations of paragraph 11.

    7. Defendant denies the allegation of paragraph 12 that the Note provided that Webster Bank shall be entitled to "all of its costs and expenses in enforcing this Note," including reasonable attorney fees.   Defendant admits that the Note provided that Webster bank was entitled to such expenses "to the extent not prohibited by applicable law".

    8. Defendant admits the allegations of paragraph 13 to the extent   that the note matured on March 1, 2007 but denies that the interest due thereunder has not been paid as all billing for interest was paid until the plaintiff ceased calculations of the interest and billing on or about April 1, 2008.

    9. Defendant denied the allegations of paragraph 14 in that the non-payment of the principal was due solely to the conduct and actions of the plaintiff.   Defendant denies that the interest as billed to him has not been paid.

    10. Defendant admits the allegations of paragraph 15.

11. Defendant denies the allegations in paragraph 16 in that defendant made each payment as billed by the plaintiff from the making of the construction loan on December 6, 2005 up to and including April of 2008. After April 1, 2008, the plaintiff did not forward any additional billing to the defendant.

12. Defendant denies that the damages suffered by plaintiff were occasioned by defendant but admits that plaintiff has occasioned damages through the result of its own negligent or intentional conduct.

13. Defendant admits the allegation in paragraph 18 as to the principal amount owed but denies the allegation that the sum of $25,457.23 in interest is owed; denies that $653.83 is owed in late fees and bank charges; denies that other fees in the sum of $2,500.00 are owed; and denies that the total owed is $383,472.06.

14. Defendant is without the knowledge to admit or deny the allegation of the daily interest accrued per diem as alleged in paragraph 19.

## AFFIRMATIVE DEFENSES

15. As a first affirmative defense, defendant alleges that the plaintiff has failed to state a claim in that plaintiff has not alleged that it is the present owner of the promissory note.

16. As a second affirmative defense, defendant alleges the impossibility of defendant's performance resulting from the actions of plaintiff. Defendant contracted to make payments of interest only on the monies advanced to him for the purchase of a residence and an interim construction loan. The payments were to be made on the first of each month but were not for an amount certain. Although the initial HUD disclosure contract provided for an interest rate of 8.5 %, the ultimate contract provided

for a variable rate whereby Webster would make a monthly calculation of the payment due based upon the monies actually advanced from the loan and the defined prime rate. Plaintiff did not bill the defendant prior to the first of each month thus making payment impossible by the first of the month. Defendant paid upon being billed. Thereafter the plaintiff falsely reported to the credit reporting agencies that defendant was late in each payment. The contract contemplated that the defendant would qualify for permanent financing from other sources or with the lender plaintiff at the maturity of the note. The false and incorrect reporting by the plaintiff of "late payments" injured the credit of the defendant to the extent that he was not able to obtain permanent financing from other sources or from the plaintiff lender. Thereafter, the defendant was promised permanent financing of the loan through a broker who required that the plaintiff correct its false credit reporting information. This the plaintiff refused to do. But for the unconscionable acts of the plaintiff in (1) billing the defendant after the first of each month when the contract required the defendant to pay prior to or on the first of the month; (2) filing false, erroneous, and misleading credit reports against the defendant; and (3) refusing to correct the false credit reporting, when requested to do so by the defendant, the defendant would have performed by paying the principal and any interest due on the date of maturity.

17. As a third affirmative defense, the defendant alleges that plaintiff has failed to mitigate its damages, if any. Defendant demanded both in oral conversations with the plaintiff's agents and in documented written demand that the plaintiff correct the false credit reporting. Defendant would have been able and is presently able to obtain

refinancing provided that the plaintiff corrects its false credit reports regarding the erroneous "late payments" and false calculations of late charges.

18. As a fourth affirmative defense, the defendant alleges the affirmative defense of waiver of strict compliance with the terms of the loan by Webster by its acceptance of irregular payments commencing in February, 2006 until March of 2008.   The plaintiff continued to accept irregular payments after sending the letter dated October 30, 2007 attached to the original complaint and identified as Exhibit B.   Since accepting the irregular payments post October 30, 2007, the plaintiff had not forwarded any additional notices of its intention not to accept irregular payments.

19. As a fifth affirmative defense, the defendant alleges as a set off the violations of the plaintiff under 15 U. S. C. Section 1601 et seq.   (TILA) and 12 U.S.C. 2605 et seq as set forth herein below.

20. Defendant requests trial by jury of all factual issues.

WHEREFORE, defendant prays this Court deny judgment to the plaintiff and enter judgment as set forth below.

## **COUNTERCLAIMS**

21. This court has supplemental jurisdiction of these counterclaims under  28 U.S.C. 1367(a) because each arises out of the same transaction and occurrence alleged in the plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution and  under  12 U.S.C. 2605 et seq Real Estate Settlement Procedures Act; and 15 U.S.C. Section 1601 et seq. Truth In Lending Act.

## **FACTS**

22. The plaintiff, a resident of the District of Columbia and the defendant, a national bank, entered into a contract whereby the plaintiff was to furnish the ultimate sum of Three Hundred Fifty-Four Thousand Eight Hundred and Sixty-One Dollars and No Cents ($354,861.00) at the rate of 8.5 % interest on the total sum of the monies advanced from such approved loan. (See HUD disclosure statement- Exhibit 1)  The loan was for purchase of a residence for the defendant and construction upon such residence.   At the time of closing of such contract, the plaintiff changed the terms of the interest rate and incorporated the variable rate terms tied to the highest   prime rate published in the Wall Street Journal plus 1.5 percent. (See plaintiff's Exhibit A). Change in the interest rate fluctuated with each change in the published prime rate. Such note required payment at such variable interest rate on the first of each month commencing February 1, 2006.

22. Webster serviced its loan to the defendant. The defendant did not receive billing from Webster prior to February 1, 2006 so as to enable defendant to make his first payment timely nor were any subsequent billing statements received prior to the payments being overdue.

23. The defendant would not have signed the construction loan note at such interest rate after he had entered into a contract with Webster as evidenced by plaintiff's Exhibit A for a fixed interest rate of 8.5 percent but for the timing of the

closing.  The defendant had not qualified for any other loan and his contract to purchase the subject property prevented him from searching for another loan.  The changing of the fixed interest rate to the variable interest rate was a bait and switch tactic of Webster.

24. The prime interest rate as published by the Wall Street Journal plus 1.5 percent was in each instance from February 1, 2006 until March 1, 2007 a larger sum than the contracted for fixed rate of 8.5 percent.

25. The result was that the defendant paid an interest rate of 9 % for February and March of 2006; paid an interest rate of 9.25 percent for April and May of 2006; paid an interest rate of 9.5 percent for June of 2006; and paid an interest rate of 9.75 percent from July of 2006 until March of 2007- the month of maturity.  Since each payment was deemed to be "late" because it was not paid on the first of each month, an additional 5 % was added to the payment due.  See Plaintiff's Exhibit A paragraph 6.

26. The plaintiff filed false and misleading credit reports against the credit rating of the defendant commencing in April of 2006 as being late and delinquent.  The credit rating of the defendant diminished as a direct result.

27.  The defendant and the plaintiff contemplated that the defendant would obtain other financing at the maturity date of the loan.  " THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER WHICH MAY BE THE

LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY."
See plaintiff's Exhibit A, First paragraph.

28. The plaintiff thus was aware that the credit rating of the defendant was of paramount importance to the defendant being able to qualify and obtain other financing prior to maturity.

29. The defendant spoke with a lending agent with Webster, Ms. Monica McRann, and discussed with her the late billing practices of Webster were responsible for the late payment by defendant and in turn such practices were damaging the defendant's attempts to refinance the loan. Despite a written request from defendant that Webster change its billing practices and its credit reporting practices to reflect the accurate payment history of defendant Webster did not do so. Webster is a national bank.

30. The defendant sought out refinancing with Webster through Ms. McRann and paid a fee of $500.00 for the beginning of the process of approval. Ms. McRann informed the defendant that with regard to the refinancing, "We are going to do this". After that defendant had no response from Ms. McRann or any of her supervisors as to the status of the permanent financing.

31. The defendant sought out other financing through Great Oaks Lending partners and was informed that financing was available provided Webster would correct the late payment information to the three major credit reporting entities. The defendant requested that Webster make such corrections. This was refused by Webster.

32. The defendant was unable to obtain outside financing without the corrections to his credit history by Webster.

33. The defendant received the demand letter evidenced by plaintiff's Exhibit B. The defendant responded with a formal written demand that Webster correct its false reporting to the credit reporting entities. This was refused.

34. The defendant invested the sum of twenty thousand dollars in the subject residence in addition to those monies advanced by Webster.

35. As a result of the investment of monies and the time and efforts of the defendant in the construction of the residence, the value of the property has increased to four hundred and twenty five thousand dollars ($425,000.00).

## COUNT 1

### COUNTERCLAIM FOR BREACH OF CONTRACT

36. Defendant repeats and incorporates all of the paragraphs 22 through 35 as though fully restated. This is a counter claim for damages for breach of contract by the plaintiff. The court has jurisdiction of this counterclaim under 28 U.S.C. 1367(a) because it arises out of the same transaction and occurrence alleged in the plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

37. Webster has breached the contract by making performance by the defendant an impossibility by its failure to bill the defendant prior to the first of each month so that timely payment could be made by the defendant of the interest payments due on the first of each month.

38. Webster has breached the contract by making performance by the defendant in payment of the total amount of principal due at the date of maturity on March 1, 2007

an impossibility, by its willful destruction of his credit rating and thus the ability to borrow those sums necessary to comply with the payment on March 1, 2007.

39. The terms of the contract implied that the plaintiff would make such calculations and billing timely in order for the defendant to make the payments due on the first of the month under the terms of the note.

40. The terms of the contract imputed to the plaintiff the duty to make such timely calculations and billing.

41. The late billing and calculation of interest due by Webster was inconsistent with the existence of the contract.

42. The breach of the contract by Webster was material and the damages arising therefrom were natural, probable, and foreseeable.

43. The notice of foreclosure by the defendant and the false credit reporting of late payments has resulted in damage to the credit reputation of the defendant and so long as such false credit record remains on the credit history of Mr. Sipes, he will have a diminished ability to borrow money or to obtain goods on time.   Mr. Sipes presently cannot obtain a loan to refinance the residential property in the total sum of the principal and interest since April of 2008.   Such damage to the credit reputation of the defendant will damage Mr. Sipes well into the foreseeable future.   The loss of credit reputation has specially damaged Mr. Sipes in the sum all interest payments paid to date in approximate sum of sixty five thousand dollars, ($65,000.00); closing or settlement fees in the approximate   sum of twelve thousand dollars ($12,000.00); down payment or escrow amount of forty thousand dollars ($40,000.00); loss of additional personal investment of twenty thousand dollars ($20,000); and loss of increase in value

of residence in the sum of seventy five thousand dollars ($75,000.00) for a total special damage loss of two hundred and twelve thousand dollars ($212,000.00).

44. The switch and bait tactics of Webster in changing the interest rate from the HUD disclosure statement of 8.5 % to the variable interest rate defined in Webster's Exhibit A constitutes fraud and as such defendant is entitled to exemplary damages for which he hereby sues in a sum to be determined by the trier of fact.

45. The imposition of the 5 % late fee on falsely declared "late payments" constitutes fraud and as such defendant is entitled to exemplary damages for which he hereby sues in a sum to be determined by the trier of fact.

## COUNT 2

## COUNTERCLAIM FOR DAMAGES PURSUANT TO 12U.S.C. 2605 ET SEQ

## REAL ESTATE SETTLEMENT PROCEDURES

46. Defendant repeats and incorporates all of the paragraphs 22 through 35 as though fully restated. This is a counter claim for damages for violations of the Real Estate Settlement Procedures Act and this Court has jurisdiction pursuant to 12 U.S.C. 2605 et seq and because it arises out of the same transaction and occurrence alleged in the plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

47. The loan made to defendant by Webster was a federally related mortgage as Webster is a national banking association and is therefore subject to the provisions of 12 U.S.C. 2605 et seq.

48. Webster is a "servicer" as defined by 12 U.S.C. 2605 et seq in that Webster received all scheduled periodic payments from defendant.

49. Webster did not respond in writing within 20 days of defendant's first or second written request for information related to the servicing of the subject loan nor did it make corrections to the incorrect information it had provided to the three consumer credit reporting agencies which had received such incorrect information regarding late payments, nor did Webster make corrections to the account of defendant and credit his account with incorrect assessments of late fees.  Importantly, Webster did not provide a written correction or explanation as required by the act which would have enabled Mr. Sipes to use such letter of explanation, (assuming it would have been an accurate retraction of the false credit reporting against Mr. Sipes), to inform the consumer credit reporting entities and potential lenders of the true credit history of the loan and thus obtain permanent financing of the note on date of maturity.

50. Immediately after receipt of two written inquiries into the faulty billing practices as described herein and complaints that the false credit reporting was harming the credit of the defendant, Webster continued to make erroneous reports to the consumer credit reporting agencies without waiting an intervening 60 day period as required by the act.

51. As a direct result of such violations the defendant sustained damage to his credit reputation and was unable to obtain permanent financing for the residence.  As a result he has sustained actual damages of the sum all interest payments paid to date in approximate sum of sixty five thousand dollars, ($65,000.00); closing or settlement fees in the approximate   sum of twelve thousand dollars ($12,000.00); down payment or escrow amount of forty thousand dollars ($40,000.00); loss of additional personal investment of twenty thousand dollars ($20,000); and loss of increase in value of

residence in the sum of seventy five thousand dollars ($75,000.00) for a total special damage loss of two hundred and twelve thousand dollars ($212,000.00) for which sum the defendant hereby sues.

## COUNT 3

### COUNTERCLAIM FOR DAMAGES PURSUANT TO EQUAL CREDIT OPPORTUNITY ACT 15 U.S.C. SECTION 1601, ET. SEQ.

52. This is an action for recovery of damages. This counter complaint is filed and these proceedings are instituted under the Consumer Credit Protection Act, 15 U.S. C 1601 et seq. and Title 12 Code of Federal Regulations, Part 226, regulation Z and X. Jurisdiction of this court is invoked pursuant to Title 15 U. S. C. §§1601, 1640(e) and . The court has jurisdiction of this counterclaim under 28 U.S.C. 1367(a) because it arises out of the same transaction and occurrence alleged in the plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

53. The disclosures made in relation to the consumer credit transaction were not presented in the manner required by law. The disclosures were not grouped together and were not segregated from everything else as required by Title 12 Code of Federal Regulations, Section 226.17(a)(1). Instead, Webster's disclosure statements was arranged as follows: The interest disclosures were grouped together with other information within the documents.

54. Webster failed to accurate disclose the finance charge and interest charge as required by Title 12 Code of Federal Regulations, Section 226.7(f).

55. Webster failed to disclose in or with the disclosure statement each periodic rate that may be used to compute its finance charge, the range of balances to which such periodic rate is applicable, and the corresponding annual percentage rate.

56. Webster failed to compute in or with the disclosure statement the annual percentage rate (or rates) of its finance charge as required by Title 12 Code of Federal Regulations, Section 226.7(g).

57. By reason of the foregoing, Webster has failed to make the disclosures required by 15 USC §1601 et. seq. and Title 12 Code of Federal Regulations, Section 226.7, clearly and conspicuously in writing, in a form that defendant could keep as required by 15 USC §1601 et. seq. and Title 12, Code of Federal Regulations, Section 226.5(a)(1).

58. As a result of Plaintiff's aforesaid violations, Webster is liable to defendant Jon Sipes in an amount not less than $2000.00 per violation, and cost of litigation, as provided in Title 15 United States Code, Section 1601 et. seq.

COUNT FOUR

COUNTERCLAIM FOR VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT OF DISTRICT OF COLUMBIA

59.   Defendant incorporates all of the facts alleged in paragraphs 22 through 35. The court has jurisdiction of this counterclaim under 28 U.S.C. 1367(a) because it arises out of the same transaction and occurrence alleged in the plaintiff's complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

60. Webster is a provider of goods and services as defined by the Uniform Deceptive Trade Practices Act and adopted by the District. Defendant Mr. Sipes is a consumer as defined in such act through financing of the mortgage and construction loan.

61. Webster employed the following false, misleading and deceptive acts in the financing and servicing of the purchase and construction loan:

> (1) Representing in the HUD disclosure statement and in other representations that the interest on the loan was to be at a fixed rate of interest of 8.5 % and switching the rate to the variable sum of 1.5 % over a defined prime rate at the time of closing;
>
> (2) Representing that an additional 5 % would only be charged if the monthly payment was not timely made, while knowing that it would not bill the defendant on the amount due on the varying monthly calculations until after such monthly payment was in default;
>
> (3) Representing that only accurate reporting of defendant's credit would be made to the different consumer credit reporting entities;
>
> (4) Representing that it would comply with all federal laws in connection with the financing of the loan including correcting the false credit reports and refrain from making any additional reports within 60 days of the defendant's complaint regarding his account.

62. Webster failed to disclose the foregoing information about its financial services that was known at the time of the transaction and with the intent to induce the

defendant into the transaction that defendant would not have entered into if the information had been disclosed.

63. Defendant Mr. Sipes relied upon such representations to his economic detriment. Webster's conduct as set forth above in paragraph 61 was unconscionable in that such conduct took advantage of Mr. Sipes's incapacity or inability to refinance at the time of the bait and switch of the interest rate at the time of the closing of the mortgage. Further Webster's conduct took advantage of defendant's inability to perform under the contract when Webster delay occasioned the false characterization of defendant's monthly payments as "late".

64. The conduct of Webster as described in this counterclaim was a producing cause of actual damage to the defendant as follows:

Loss of interest payment in approximate sum of sixty five thousand dollars, ($65,000.00);

Loss of closing or settlement fees in the approximate sum of twelve thousand dollars ($12,000.00);

Loss of down payment or escrow amount of forty thousand dollars ($40,000.00);

Loss of additional personal investment of twenty thousand dollars ($20,000); and

Loss of increase in value of residence in the sum of seventy five thousand dollars ($75,000.00) for a total special damage loss of two hundred and twelve thousand dollars ($212,000.00) for which sum the defendant hereby sues.

65. The conduct of Webster as alleged in this counterclaim was done intentional and knowingly, and with actual awareness of the falsity, deception and unfairness with the specific intent of having Mr. Sipes detrimentally rely on the falsity, deception and

unfairness. The defendant Mr. Sipes, brings suit for three times his actual economic damages as set forth in paragraph 64 or the sum of six hundred and thirty six thousand dollars ($636,000.00).

---

WHEREFORE, Defendant requests this Honorable Court deny in all things the complaint of Webster and to dismiss such complaint with prejudice; and to enter judgment in defendant's favor and against Webster in the sum of $212,000.00 in actual economic damages; and treble damages in the sum of $636,000.00; the sum of $2,000.00 for each failure of disclosure or the sum of $6,000.00 plus interest from the date of filing until judgment at the legal rate and court costs. Defendant requests exemplary damages in a sum to be determined by the trier of fact, for the fraud committed in connection with the material breach of contract.

    Respectfully Submitted

    _____
    John Sipes
    Pro Se
    915 Potomac Avenue, S.E.
    Washington, D.C. 2003
    (202) 210-4313

## VERIFICATION

I, Jon Sipes, hereby verify that I have personal knowledge of the statements in support of the affirmative defenses made in answer to the complaint of the plaintiff and that they are true and correct.

District of Columbia   )

Sworn to before me this ___23rd___ day of June, 2008.

_____

Notary Public for the
District of Columbia

My Commission expires: ___07/31/2012_____

## CERTIFICATE OF SERVICE

I, JON SIPES, hereby certify that true and correct copy of the foregoing document was served upon the attorneys for the plaintiff, Amy Sanborn Owen of Cochran & Owen, LLC at 8000 Towers Crescent Drive, Suite 160, Vienna, VA 22182 pursuant to the Federal Rules of Civil Procedure on this the 23 day of June, 2008.

_____
JON SIPES